SAMUEL M. BROWN, Administrator of the Estate of
WILLIAM H. BROWN, Deceased, Plaintiff in Error,
v. JOSHUA P. RICHARDS, Defendant in Error.

**St. Louis Court of Appeals, February 23, 1897.**

Contract, Construction of: EVIDENCE. In a suit on a contract,
whereby the obligors agreed to pay a stipulated sum if a depot was
established at a certain point on a railroad named in the contract,
conditioned that, if from any cause, the station should be "removed
or discontinued," the obligees would refund the money, where the
evidence was that the station was a country station, and tended to
show that the depot was closed for about one month, after which it
was reopened and continuously used by the traveling public,—*Held:*
That the temporary closing of the depot building was not a discon-
tinuance of the station within the meaning of the contract.

*Error to the Hannibal Common Pleas Court.*— HON.
REUBEN F. ROY, Judge.

AFFIRMED.

*W. D. Anderson* and *R. E. Anderson* for plaintiff
in error.

The circumstances under which the contract was
made may be looked into, and the acts of the parties
to the instrument are entitled to great weight. *Dobbins
v. Edmonds*, 18 Mo. App. 307.

The terms of every written instrument are to be
understood in their plain, ordinary and popular sense.
Greenlf. Ev., sec. 278.

It is a common law duty of railroads to provide
reasonable accommodations at their stations for the
passengers who are, by the manner of doing business,
invited and expected to travel on their roads. *Mc-
Donald v. R. R.*, 26 Iowa, 124, 139.

As to definition of "depot" see 1 Rorer on R. R.'s, 486; *Magee v. R. R.*, 45 N. Y. 520.

*F. L. Schofield* for defendant in error.

No declarations of law were asked for, and none were given or refused. There is, therefore, nothing for review in this court. *Kurlbaum v. Roepke*, 27 Mo. 161; *Easley v. Elliott*, 43 *Id.* 289; *Weilandy v. Lemuel*, 47 *Id.* 322; *Harrington v. Minor*, 80 *Id.* 270; *Wood* {v. Land, 22 Mo. App. 425; *Wenzell v. Erath*, 48 *Id.* 476; *Taylor v. Cayce*, 97 Mo. 242, 249; *Miller v. Breneke*, 83 *Id.* 163. See also, R. S. 1889, sec. 2135; *Griffith v. Construction Co.*, 46 Mo. App. 539; *Nichols v. Carter*, 49 *Id.* 401; *Shipp v. Snyder*, 121 Mo. 155; *Cochran v. Thomas*, 131 *Id.* 258, 269.

For definition of "station" see *R. R. v. Latimer*, 128 Ill. 171; Web. Dic., title, "Station;" War. Dic., title, "Station." See, also, R. S. 1889, sec. 2584; *State v. R. R.*, 37 Conn. 153, and Web. Dic., title, "Depot;" War. Dic., title, "Depot."

BIGGS, J.—During the lifetime of William H. Brown, deceased, to wit, on the sixteenth day of September, 1871, the defendant and others executed and delivered to him and other obligees the following contract, to wit:

"We, A. W. Lamb, Thomas Hassard, J. W. Hawkins, Josiah Hunt, R. F. Lakeman and Joshua P. Richards, have this day, the sixteenth day of September, 1871, received of J. A. B. McElroy, James Robertson, William H. Brown and John M. Ayres, $400, which they promised to pay if a depot is established on the H. & C. M. railroad on the W. $\frac{1}{2}$ of the S. E. quarter of section (3) three, township (56) fifty-six, range (6) six, to be a permanent depot, known as Rensalaer Station. Now, if from any cause,

the said station should be removed or discontinued, we or either of us obligate ourselves to refund said McElroy, Robertson, Brown and Ayres, each one hundred dollars to be due from the day said station is discontinued, to bear ten per cent from due till paid."

The petition averred a discontinuance of the station mentioned on the first day of August, 1894, by reason of which the plaintiff claimed that the defendant had become indebted to the estate of his intestate in the sum of $100, with interest thereon at the rate of ten per cent from the first day of August, 1894. The answer is a general denial. The cause was submitted to the court without a jury. No instructions were asked or given. The judgment was for the defendant. The plaintiff has brought the case here and complains of the admission and rejection of evidence, and that under a proper application of the evidence to the contract in question the finding and judgment ought to have been for him.

The main contention of counsel for plaintiff is, that all of the evidence conclusively shows that on the first day of August, 1894, the Missouri, Kansas & Texas Railroad Company, which is conceded to be the present owner of the railroad mentioned in the contract, discontinued the depot or station in question within the meaning of the contract. Concerning this question the defendant's evidence may be thus summarized: Prior to August 1, 1894, the railroad company kept a telegraph office in its depot building at Rensalaer station, and the telegraph operator acted as passenger and freight agent. About the time mentioned the company removed the telegraph office and discharged the agent. The depot was closed until about the tenth day of September following, when another agent was appointed, who had authority to sell tickets, but not to

*CONSTRUCTION of contract: evidence.*

receive freight. Whether in the interim mentioned the company had any one at Rensalaer who had authority to sell tickets, is not clear under the defendant's evidence. After the removal of the telegraph office and the discharge of the freight agent, no freight was received by the company for Rensalaer station, unless the freight charges were prepaid, and no freight would be delivered there unless the consignee or owner was present to receive it. If he was not there, it would be put off at the next station. If cars were needed for the shipment of stock or grain from Rensalaer the shippers were compelled to go to Monroe City, a distance of seven or eight miles, where there was a telegraph office. All trains stopped at the station for the purpose of receiving freight or passengers, and at all times tickets were sold to passengers for that station, and with the exception of the time mentioned tickets could be procured there for all points on the railroad or connecting lines. Since the tenth of September, 1894, the depot building has been kept open for the convenience and comfort of passengers or other persons having business with the road. It was also in evidence that at many stations on all railroads there were no telegraph offices or freight agents. Several witnesses testified that in railroad parlance the word "station" meant a place or platform where trains stopped for passengers or freight, and that the word "depot" referred to a building which is used in connection with a station for the accommodation of passengers and the storage of freight. The evidence introduced by the plaintiff made out a stronger case as to the inconvenience suffered by shippers under the new order of things, and it also tended to show that the depot building was locked up from August 1, 1894, to about the first of December following.

The contract uses the words "station" and "depot," and they seem to have been used interchangeably. The obligees resided near the station and probably were as much interested in providing a suitable building for the shelter and comfort of passengers at the station as they were in securing facilities for the shipment of stock or produce. Hence we think that the parties to the contract contemplated that a station with a depot building attached should be established and maintained at Rensalaer. The questions under the record then are, did the removal of the telegraph office or the discharge of the freight agent or the closing of the depot building for something over a month amount to a discontinuance of the station, within the meaning of the contract. Undoubtedly a telegraph office in connection with a railroad station is a convenient instrumentality, as it enables shippers to order cars without trouble or delay, and passengers and others interested may be advised of the movement of trains; and it also relieves shippers of some inconvenience if there is a freight agent at the station, thus enabling them to receive small shipments of freight without being present at the time of the arrival of the train. But can it be said as a matter of law, that all railroad stations, regardless of the business done, are incomplete without a freight agent or telegraphic facilities? We will have to so decide in order to reverse the judgment on these grounds, as the evidence shows that Rensalaer is a country station where there is but little shipping and travel. As heretofore stated the evidence tends to show that there are many stations on all railroads where there are no telegraph offices or freight agents, and we have been referred to no authority holding that these omissions are in violation of the common law duty of railroad companies. On the contrary such stations are expressly recognized by the leg--

islature of our state. In section 2584 of the Revised Statutes of 1889, it is provided that *"at all stations or depots where a telegraph office is kept,* the agent or telegraph operator at such station or depot shall, for the information of the traveling public, indicate on such bulletin board the delay of any passenger train, showing how much such train may be behind schedule time." Therefore we can find neither in the law nor in the facts a justification for writing these conditions into this contract. Neither do we think that the closing of the depot building from August 1, 1894 to September 10 following, amounted to a violation of the terms of the agreement. The evidence tends to show that the closing was temporary, for after the tenth of September the building was reopened, and since that time it has been used continuously by the traveling public. Suppose the building had been destroyed by fire or other accidental cause, it would not be pretended that a forfeiture under the contract could be enforced until the company had failed within a reasonable time to rebuild. We must therefore overrule the assignment.

Under the foregoing views the action of the trial court in admitting and rejecting evidence becomes unimportant. If we exclude from consideration the testimony objected to and consider that which the circuit court excluded, the result would not be different.

With the concurrence of the other judges, the judgment will be affirmed. It is so ordered.